# SCHAFKOPF LAW, LLC
### ATTORNEYS AT LAW

March 5, 2018

U.S. District Court, ED of PA
Office of the Clerk of Court
U.S. Courthouse
601 Market Street, Room 2609
Philadelphia, PA 19106

**Re: Nicholas Magnotta v. Rocksolid Partners LLC et al**

To Whom It May Concern:

  Enclosed please find one (1) original and one (1) copy of Plaintiff's Civil Action Complaint, along with a CD containing a pdf version of same and a check in the amount of $400.00, in regards to the above captioned matter.

  Kindly file the original Complaint and return a time-stamped copy to the undersigned along with the Civil Action Summonses.

Sincerely,

Gary Schafkopf, Esq.

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Nicholas Magnotta

**DEFENDANTS**
Rocksolid Partners LLC and Matthew Cipirch

**(b)** County of Residence of First Listed Plaintiff   New Castle County DE
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Chester County PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Schafkopf Law LLC, 11 Bala Ave Bala Cynwyd PA 19004; 610-664-5200
Weisberg Law; 7 South Morton Ave, Morton PA 19070; 610-690-0880

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332

Brief description of cause:
Defendants  breach contract with Plaintiff regarding home improvement contract

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions:)*
JUDGE _____  DOCKET NUMBER _____

DATE
03/05/2018

SIGNATURE OF ATTORNEY OF RECORD
*Gary Schafkopf*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 1013 Foulk Rd, Wilimington DE 19803

Address of Defendant: 986 Pottstown Pike Chester Springs PA 19425

Place of Accident, Incident or Transaction: November 20, 2016

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes☐   No☒

Does this case involve multidistrict litigation possibilities?     Yes☐   No☒

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?     Yes☐   No☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

**A.** *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
     (Please specify) _____

**B.** *Diversity Jurisdiction Cases:*

1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
     (Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Gary Schafkopf, Esq _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: 3-5-18 _____   *Attorney-at-Law*     83362   Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 3-5-18 _____   *Attorney-at-Law*     83362   Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Nicholas Magnotta | : | CIVIL ACTION |
| v. | : | |
| Rocksolid Partners LLC et al | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
  and Human Services denying plaintiff Social Security Benefits.                              ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
  exposure to asbestos.                                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
  commonly referred to as complex and that need special or intense management by
  the court.  (See reverse side of this form for a detailed explanation of special
  management cases.)                                                                          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           (X)

| 3-5-18 | _Gary Schafkon_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-664-5200 | 888-283-1334 | gary@schaflaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

WEISBERG LAW
Matthew B. Weisberg, Attorney ID No. 85570
7 South Morton Ave.
Morton, PA 19070
610-690-0801
Fax: 610-690-0880
**Attorney for Plaintiff**

Schafkopf Law, LLC
Gary Schafkopf, Attorney ID No. 83362
11 Bala Ave
Bala Cynwyd, PA 19004
610-664-5200 Ext 104
Fax: 888-283-1334
**Attorney for Plaintiff**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS MAGNOTTA<br>1013 Foulk Rd<br>Wilmington, DE 19803 | CIVIL ACTION |
| Plaintiff,<br>v. | DOCKET NO. |
| ROCKSOLID PARTNERS LLC<br>976 Pottstown Pike<br>Chester Springs, PA 19425 | JURY TRIAL OF TWELVE (12) JURORS<br>DEMANDED |
| and | |
| MATTHEW CIPIRCH<br>976 Pottstown Pike<br>Chester Springs, PA 19425 | |
| and | |
| JOHN DOES 1-10<br>Defendants. | |

## CIVIL ACTION COMPLAINT

1. Plaintiff, Nicholas Magnotta, is an adult individuals and citizen of Delware, residing at the above captioned address.

2. Defendant, Rocksolid Partners LLC, is a Pennsylvania Limited Liability Corporation, duly organized and existing under and by virtue of laws of the Commonwealth of Pennsylvania, doing business at the above captioned address.

3. Defendant, Matthew Cipirch, is the president and member of Rocksolid Partners, LLC, at the above captioned address and at all times material was working in the course and scope of his employment as an officer, owner, agent, servant, workmen and/or employee of said Defendant.

4. Defendants, John Does 1-10, is a moniker/fictitious name for individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable hereunder for the reasons set forth below or inferred therefrom. Each of these parties are incorporated as Defendants in each and every count and averment listed above and below.

## JURISDICTION and VENUE

5. Venue is proper in the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b)(1), as at least one (1) Defendant resides, maintains a principal place of business, and/or does business in the Eastern District of Pennsylvania.

6. Jurisdiction of this Honorable Court is based on diversity of citizenship. 28 U.S.C. § 1332., the amount in controversy, exclusive of interest and costs exceeds the sum of $75,000.00.

## OPERATIVE FACTS

7. Plaintiff is the owner 1013 Foulk Rd, Wilmington Delaware (the "property"), a single-family ranch style home.

8. On or about August 26, 2016, Plaintiff struck and damaged a water pipe in the home's laundry room.

9. The damage caused extensive flooding throughout the interior of the property.

10. On or about August 26, 2016, Plaintiff filed a Homeowners Insurance claim with USSA Insurance. Claim Number: 039963670-00; Policy Number: 039963670/90A.

11. On or about September 2, 2016, the property was inspected by a third-party adjuster to USSA Insurance.

12. USSA Insurance issued a check to Plaintiff for $45,088.25.

13. On or about November 20, 2016, Plaintiff entered into an agreement with Defendants Rocksolid Partners LLC and Matthew Cipirch to repair the damage to Plaintiff's property. **Exhibit A**

14. Per the terms of the agreement Defendants, Rocksolid and Michael Cipirch scope of work included but was not limited to rebuilding the kitchen, replacing the HVAC system, remove and replace all damaged flooring throughout the property, replacing and upgrading the electrical system in the home, trim work and painting. **See Exhibit A**

15. Under the terms of the agreement Plaintiff agreed to pay Defendants, Rocksolid and Cipirch $54,202.80. **See Exhibit A.**

16. Defendants advised Plaintiff that the project was to be completed by December 10, 2016.

17. Plaintiff provided Defendant Cipirch a deposit of $7,000.00 to begin working on property.

18. Under the terms of the agreement with USSA Insurance any money distributions could come from Plaintiff's mortgage company.

19. Upon completion of predetermined phases of the construction the mortgage company would issue a check to Plaintiff and Defendants.

20. On or about November 28, 2016, Plaintiff checked into a hotel to allow Defendants to begin to demo the property.

21. Defendants were to begin to demo work on the property on November 29, 2016.

22. Over the course of several weeks Defendants conducted little to demolition on the
    property as agreed to.

23. Plaintiff would contact Defendant Rocksolid's project manager to request that he send
    crew members to work on the property.

24. Defendants would do little to no work until Plaintiff contacted Defendant Ciprich to
    advise that work was not being completed.

25. By December 10, 2016 Defendants failed to complete the demo portion of the project.

26. On or about December 12, 2016 Defendant Matthew Cipirch sent Plaintiff an email
    providing an estimate of when work was to be completed.

27. On or about December 14, 2016, Defendant Cipirch demanded Plaintiff a second
    payment despite not having completed the agreed upon demolition work.

28. Over the following weeks Plaintiff continued to have contact Defendant Cirpich in order
    to have demolition work conducted on the property.

29. In an effort to get the project back on track Defendant Cirpich hired Plaintiff's girlfriend,
    Beau Cameron as the new project manager.

30. On or about January 3, 2017, Plaintiffs mortgage company issued a check to Plaintiff and
    Defendant Rocksolid LLC for $21,002.94.

31. In or around the end of January 2017 Defendants completed demolition of the property
    and were set to begin working on the agreed upon renovations.

32. Despite Defendants assurances that the project would be completed in a timely manner,
    the project continued to experience delays despite Cameron acting as project manager.

33. Defendants failed to appear on the job site and would only sent subcontractors or crew members to work for a short period of time each day.

34. Defendant Cirpirch would redirect crew members to other worksites and fail to advise Cameron of his decisions.

35. Plaintiff and Cameron continued to call and text Defendant asking that he send his crew to work on the project.

36. During the course of the project Plaintiff was advised that the roof on the property was leaking.

37. Plaintiff relied the information to Defendant Cipirch, who advised that the roof would be repaired before continuing to work on the interior of the property.

38. Defendant Cirpirch advised Plaintiff that due to the leak the electrical panel had been damaged and would need to be replaced.

39. Plaintiff paid Defendants $1,100.00 to upgrade the electrical panel.

40. On or about January 27, 2016, Plaintiff sent Defendant Cipirch an email expressing his concern about having new hardwood flooring installed due to the leaking roof not being repaired.

41. Defendants advised that the leaking roof would be repaired before the hardwood floors would installed.

42. Defendants failed to fix the leaking roof as agreed to and installed the hardwood floors.

43. Plaintiff's hardwood floors were damaged when it rained due to Defendants negligent actions.

44. Per the terms of the contract Defendant was to install a split HVAC unit for the property.

45. Defendant failed to properly install both HVAC units.

46. Plaintiff did not have a function heating system during the winter of 2017.

47. During the course of the construction Defendant removed Plaintiff's personal belongings and placed them into a portable storage unit on the property.

48. Plaintiff discovered that his personal property had been damaged due to the crew's negligence when placing items in the storage unit.

49. Plaintiff discovered damage to various parts of the property caused by Defendant's workers during the course of the construction.

50. On or about February 12, 2017 Plaintiff advised Defendant Cipirch that several items in the home being damaged due to his worker's negligence.

51. Despite several assurances from Defendant Cipirch that damage property would be fixed and the project completed the project continued to be delayed.

52. In or about February 2017 Defendants installed a new shower in the upstairs bathroom.

53. Due to Defendants negligent instillation the shower pipes leaked and damaged the kitchen ceiling, cabinets and flooring.

54. On or about March 6th Plaintiff's mortgage company distributed the final check for approximately $27,000.00

55. Plaintiff kept approximately $13,000.00 of the mortgage company's final distribution due to damage caused by Defendants workers.

56. Despite several assurances from Defendant Cipirch that damage property would be fixed and the project completed the project continued to be delayed.

57. On or about June 7, 2017 Plaintiff terminated Defendants, Rocksolid Partners LLC and Matthew Cipirch.

58. Throughout the course of the construction Plaintiff paid for materials out of pocket.

59. During the course of the construction Defendant's failed to remove and/or protect Plaintiff's kitchen appliances including the stove and refrigerator.

60. Due to Defendant's negligence Plaintiff's kitchen appliances were severally damaged.

61. Plaintiff discovered damage to various parts of the property caused by Defendant's workers during the course of the construction.

62. Upon terminating the Defendants Plaintiff discovered no permits had been obtained for the electrical, plumbing and HVAC system.

63. Upon terminating Defendants Plaintiff discovered that Defendants were not licensed to operate in New Castel County Delaware.

64. Upon terminating Defendants Plaintiff discovered Defendants had cut electrical wiring during the demolition and falsely told Plaintiff the damage was due to the initial water damage.

65. Plaintiff was forced to pay for new electrical throughout the property due to Defendants negligence.

66. Upon terminating the Defendants, Plaintiff discovered various electrical outlets and switches throughout the home that were not connected to the electrical paneling and do not work.

67. Upon terminating Defendants, the Plaintiff discovered Defendant failed to properly install the HVAC system in the property.

68. Defendant failed to install the correct lining and wiring for the HVAC system rendering it inoperable.

69. Plaintiff has been unable to repair the HVAC system due to the extensive damage caused by Defendants.

70. Upon terminating Defendants Plaintiff discovered exterior damage to the property creating openings for vermin to enter the property.

71. On or about August 16, 2017 Plaintiff received a proposal from J.W. Tull Contracting Services to replace and repair damage caused by Defendants. **Exhibit B**

72. As a direct and proximate result of the foregoing, Plaintiff sustained great economic loss.

73. Plaintiff and continues to experience great economic hardship and emotional distress.

## COUNT I – PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW AND DELWARE UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

74. Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

75. At all times material, Defendants' are a "person(s)" engaged in trade or commerce as that term is defined by the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law and Delaware Unfair Trade Practices Act and Consumer Protection Law .

76. The Defendants' aforementioned conduct constitutes an "unfair or deceptive practice" within the meaning of the UTPCPL and DUTPCPL

77. At all times material, Defendants have conducted itself in violation of the UTPCPL and DUTPCPL.

78. Upon information and belief, Defendants are not licensed in New Castle County Delaware to operate.

79. Upon information and belief, Defendants' have not completed the scope of the work as agreed to.

80. Defendants' attempt at collecting additional monies from Plaintiff beyond the deposit constitutes an "unfair or deceptive practice" within the meaning of the UTPCPL and DUTPCPL.

81. The UTPCPL authorizes the Court in its discretion to award up to three (3) times ("treble") the actual damages sustained for violations as well as attorneys' fees, for which Plaintiff is entitled.

82. As the direct and proximate results of the aforesaid, Plaintiff sustained the aforesaid damages (incorporated by reference).

## COUNT II- HOME IMPROVEMENT CONSUMER PROTECTION ACT (HICPA) and)

83. Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

84. At all times material, Defendants have conducted itself in violation of the HICPA aUpon information and belief, Defendants are not licensed in New Castle County Delaware to operate.

85. Upon information and belief, Defendants' have not completed the scope of the work as agreed to.

86. Upon information and belief, Defendants' have caused additional damage to the property.

87. Defendants' attempt at collecting additional monies from Plaintiff beyond the deposit without completing the agreed upon work.

88. As the direct and proximate results of the aforesaid, Plaintiff sustained the aforesaid damages (incorporated by reference).

## COUNT III– UNJUST ENRICHMENT/PROMISSORY ESTOPPEL

89. Plaintiff hereby incorporates the above paragraphs as if set forth at length herein.

90. Defendants have been unjustly enriched, they have received payment having never completed the work agreed to between the parties.

91. As the direct and proximate results of the aforesaid, Plaintiff sustained the aforesaid damages (incorporated by reference).

## COUNT IV – NEGLIGENCE

92. Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

93. Defendants negligent installation of the HVAC system has rendered it inoperable forcing Plaintiff to be without heating and air conditioning.

94. Defendants negligently rewired the electrical system in the home and negligently installed an electrical panel.

95. Defendant's failed to use proper care when placing Plaintiff's personal belongings in a portable storage unit causing extensive damage to Plaintiff's personal property.

96. All times material, Defendants deviated from the applicable standard of care and otherwise were negligent, careless, reckless, for the reasons aforesaid.

## COUNT V – BREACH OF CONTRACT/QUASI CONTRACT

97. Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

98. At all times material, Plaintiff and Defendants were parties to a contract express and/or implied at law, of which Defendants are in breach, to Plaintiff's great personal detriment and injury as aforesaid.

99. Defendants failed to complete the project within a reasonable time as agreed to between the parties.

100.      Defendants improperly installed the electrical, plumbing and HVAC systems in the home.

101.    Defendants failed to obtain the necessary permits and inspections for the property.

102.    At all times material, Defendants owed Plaintiff a duty of utmost fair dealing, to
which said Defendants' are in breach to Plaintiff's great personal detriment and injury as
aforesaid.

### COUNT VI – FRAUD/FRAUDULENT MISREPRESENTATION

103.    All preceding paragraphs of this Complaint are incorporated herein as though
fully set.

104.    Defendants' fraudulent misrepresentations included intentionally misrepresenting
to Plaintiffs that they were at all relevant times were lawfully licensed in New Castle
County to operate.

105.    Additionally, Defendants' fraudulent misrepresentations include intentionally
misrepresenting to Plaintiffs to the following:

   a.   That it was reasonably possible Plaintiff could move into his home by December
        10, 2017.

   b.   That Defendants' would complete all work agreed upon in two weeks after
        Agreement

   c.   That the Defendants would complete the work in a professional manner.

106.    The aforementioned representations were made with the intent of misleading and
inducing the Plaintiff to rely upon them.

107.    The Plaintiff's reliance on the representations was justified, and his resulting
damages were proximately caused by said reliance on the representations made by
Defendants'.

108.    As the direct and proximate results of the aforesaid, Plaintiff sustained the

aforesaid damages (incorporated by reference).

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, their

agents, servants, workmen and/or employees, individually, jointly and/or severally, for an

amount in excess of $75,000.00, plus interest costs of suit, attorneys' fees, treble damages,

statutory damages, compensatory damages, and punitive damages, plus other relief which this

Honorable Court deems necessary and just.

Respectfully Submitted,

WEISBERG LAW

BY: /s/ Matthew Weisberg
MATTHEW B. WEISBERG, ESQ.

DATED: 3-5-18

SCHAFKOPF LAW, LLC

BY: Gary Schafkopf
GARY SACHFKOPF, ESQ.

DATED: 3-5-18

# EXHIBIT A



# ROCKSOLID

750 Depretisen Blvd. STE 430, Essex PA 19564
610-810-1735 Phone      610-910-5093 Fax

## GENERAL CONTRACT FOR RESIDENTIAL REPAIR SERVICES

This Contract for Services is made effective as of November 20, 2016, by and between  Nicholas Magnotta ("Nick") of 1013 Foulk Rd, Wilmington DE, and RockSolid Partners, LLC ("RSP") of 976 Pottstown Pike, Chester Springs, Pennsylvania 19425.

**1. DESCRIPTION OF SERVICES.** Beginning on November 20, 2016, RSP will provide to Nick Magnotta  a rebuild kitchen, HVAC and complete the scope that follows the specifications set forth in the PROJECT ESTIMATE that is attached to this contract.

**2. PAYMENT.** Payment shall be made to RockSolid Partners, LLC, Chester Springs, Pennsylvania 19425. Nick Magnotta agrees to pay the sum of $54,202.80 for the detailed work.  Payment shall be made timely, within a few days of request or milestone completion that is detailed on ESTIMATE.

If any invoice is not paid when due, interest will be added to and payable on all overdue amounts at 30 percent per year, or the maximum percentage allowed under applicable Pennsylvania laws, whichever is less.

Nick Magnotta shall pay all costs of collection, including without limitation, reasonable attorney fees. In addition to any other right or remedy provided by law, if Nick fails to pay for the Services when due, RSP has the option to treat such failure to pay as a material breach of this Contract, and may cancel this Contract and/or seek legal remedies, including Mechanics Liens.

**3. TERM.** This Contract will terminate automatically upon completion by RSP of the Services required by this Contract.

**4. WARRANTY.** RSP shall provide its services and meet its obligations under this Contract in a timely and workmanlike manner, using knowledge and recommendations for performing the services which meet generally acceptable standards by building codes, and include a one year warranty on services as well as pass all material and equipment warranties along to Nick Magnotta.

**5. DEFAULT.** The occurrence of any of the following shall constitute a material default under this Contract:

a.     The failure to make a required payment when due.

b.     The insolvency or bankruptcy of either party.

c.     The subjection of any of either party's property to any levy, seizure, general assignment for the benefit of creditors, application or sale for or by any creditor or government agency.

d.     The failure to make available or deliver the Services in the time and manner provided for in this Contract.

**6. REMEDIES.** In addition to any and all other rights a party may have available according to law, if a party defaults by failing to substantially perform any provision, term or condition of this Contract (including without limitation the failure to make a monetary payment when due), the other party may terminate the Contract by

1



**ROCKSOLID** Partners, LLC
234 Eagleview Blvd. STE 519, Exton PA 19341
610-902-1712 Phone          610-900-9893 Fax

providing written notice to the defaulting party. This notice shall describe with sufficient detail the nature of the default. The party receiving such notice shall have 60 days from the effective date of such notice to cure the default(s). Unless waived in writing by a party providing notice, the failure to cure the default(s) within such time period shall result in the automatic termination of this Contract.

**7. FORCE MAJEURE.** If performance of this Contract or any obligation under this Contract is prevented, restricted, or interfered with by causes beyond either party's reasonable control ("Force Majeure"), and if the party unable to carry out its obligations gives the other party prompt written notice of such event, then the obligations of the party invoking this provision shall be suspended to the extent necessary by such event. The term Force Majeure shall include, without limitation, acts of God, fire, explosion, vandalism, storm or other similar occurrence, orders or acts of military or civil authority, or by national emergencies, insurrections, riots, or wars, or strikes, lock-outs, work stoppages, or other labor disputes, or supplier failures. The excused party shall use reasonable efforts under the circumstances to avoid or remove such causes of non-performance and shall proceed to perform with reasonable dispatch whenever such causes are removed or ceased. An act or omission shall be deemed within the reasonable control of a party if committed, omitted, or caused by such party, or its employees, officers, agents, or affiliates.

**8. DISPUTE RESOLUTION.** The parties will attempt to resolve any dispute out of or relating to this Agreement through friendly negotiations amongst the parties. If the matter is not resolved by negotiation, the parties will resolve the dispute using the below Alternative Dispute Resolution (ADR) procedure.

Any controversies or disputes arising out of or relating to this Agreement will be submitted to mediation in accordance with any statutory rules of mediation. If mediation is not successful in resolving the entire dispute or is unavailable, any outstanding issues will be submitted to final and binding arbitration under the rules of the American Arbitration Association. The arbitrator's award will be final, and judgment may be entered upon it by any court having proper jurisdiction.

**9. ENTIRE AGREEMENT.** This Contract contains the entire agreement of the parties, and there are no other promises or conditions in any other agreement whether oral or written concerning the subject matter of this Contract. This Contract supersedes any prior written or oral agreements between the parties.

**10. SEVERABILITY.** If any provision of this Contract will be held to be invalid or unenforceable for any reason, the remaining provisions will continue to be valid and enforceable. If a court finds that any provision of this Contract is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision will be deemed to be written, construed, and enforced as so limited.

**11. AMENDMENT.** This Contract may be modified or amended in writing by mutual agreement between the parties, if the writing is signed by the party obligated under the amendment.

**12. GOVERNING LAW.** This Contract shall be construed in accordance with the laws of the State of Pennsylvania.

**13. NOTICE.** Any notice or communication required or permitted under this Contract shall be sufficiently given if delivered in person or by certified mail, return receipt requested, to the address set forth in the opening paragraph or to such other address as one party may have furnished to the other in writing.

7



**14. WAIVER OF CONTRACTUAL RIGHT.** The failure of either party to enforce any provision of this Contract shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Contract.

**15. ATTORNEY'S FEES TO PREVAILING PARTY.** In any action arising hereunder or any separate action pertaining to the validity of this Agreement, the prevailing party shall be awarded reasonable attorney's fees and costs, both in the trial court and on appeal.

**16. CONSTRUCTION AND INTERPRETATION.** The rule requiring construction or interpretation against the drafter is waived. The document shall be deemed as if it were drafted by both parties in a mutual effort.

**17. CHANGE NOTICES.** Any change notice shall be reviewed verbally and approved with written documentation. Change notices must be approved by a member of ___JO_____

**18. WORKSITE PERFOMANCE.**
      - Job shall be staffed with a project manager, and adequate work crews to complete the project timely, generally within 20 calendar days, pending material deliveries and various customer decisions.
      - Every precaution shall be taken to prevent any damage or rework to any area other than the given work space, however any damage that does occur will be rectified for that given surface

**19. SCHEDULE.** Project is estimated at 20 Calendar days.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the date first above written, Nick Magnotta, Owner, and Matthew Ciprich, Owner for RockSolid Partners, LLC, effective as of the date first above written.


Service Recipient:
Nicholas Magnotta
1014 Foulk Rd
Wilmington, DE

By: _____

Service Provider:
RockSolid Partners, LLC


By: _____
      Matthew Ciprich



# EXHIBIT B



J. W. Tull Contracting Services, LLC
501 Simon Rd.
Wilmington DE 19803
jason@jwtullcontracting.com
302-494-8179

## PROPOSAL

DATE: August 16, 2017

To: Nick Magnotta
1013 Foulk Rd
Wilmington De 19803

Thank you for allowing J. W. Tull Contracting to bid on this project.  Below outlines the scope of work:

**EXTERIOR**
ROOF/EXTERIOR
- Demo/disposal – remove and dispose of existing shingle and underlayment
- Inspect all sheathing – poor sheathing to be replaced at an additional cost of $50 per sheet
- New drip edge
- Ice and water shield to be installed at first 3' of perimeter
- Rhino paper underlay to be installed
- 19 sq of Tamko Heritage Series Premium 30 yr Architectural Shingle to be installed
- Ridge vent and capping to be installed where applicable
- Roof collars to be replaced
- 160 linear ft of gutter and downspout to be installed
- 265 linear ft of metal capping to be installed      $10,850
- **SIDING**
- Replacing?
- **INTERIOR**
  Upstairs Bathroom
  DEMO/DISPOSAL- remove and dispose of tile shower and tile floor, and additional material necessary $1750
  Inspect framing, level and replace sub floor $1250
  Install backer board
  Layout and install shower tile
  Install kerdi drain
  Install kerdi bond

Install grout
Install water sealant              $7650

- Re-install toilet
- Install supplies and drain for double vanity
- Install multi-function diverter for shower
- Install trim kit
- Install rainhead                 $2995

- Layout and install tile floor    $1450
- Install base trim                $800
- Skim coat and paint bathroom     $1400
- Reinstall vanity                 $850
- Reinstall electric fixtures      $650

UNFINISHED BATHROOM
- Needs final design/until design is finished the prices are only tentative
- Layout and install floor tile $1450
- Install drywall and finish $2350
- Set tub
- Run supplies for vanity fixture and drain $2450
- Install tile surround for tub $3850
- Install base trim $350
- Install vanity $450
- Electric allowance $2000
- Paint $950
- Extras $800

FRONT DOOR REINSTALL/REPLACEMENT     $3850
- Finish all currently unfinished trim and install where it is missing    $4250
- Install a total of 9 paneled hollow doors with casing and hardware $4050
- Install pocket door for bathroom or modify current door so it does not hit
- Allowance to finish fireplace $2500
- Finish ceiling downstairs to eliminate curve and tape seams and paint $4450
- Ensure proper install of recessed lights $850
- Install faux stone where garage door existed $4950
- Install new window in garage wall, (beginning to rot) $950
- Recap a total of 14 windows $3000
- Reinstall patio door and waterproof $2850

- Install tile backsplash in kitchen $2650
- Finish kitchen paint and make repairs to drywall add cover plates to receptacles $3150
- Transition from living room to garage performed poorly.  Very noticeable hump and reinstall flooring ?
- Patch hole in foyerm wall and paint $1300

- Skim coat/repair door area in bedroom and paint entire room $1950
- Identify exposed wire in hallway wall, hide patch hole, paint      $850
- Paint foyer ceiling and walls $2000
- Reinstall trim on side of stairs and finish $1000
- Repaint stair stringer $950
- Total allowance for window painting $2000

- Cover supply in upstairs bedroom and carpet ?
- Allowance to finish closet area in bedroom 1 $1000

  HVAC
- Install proper line hide for mini split system wiring and line sets
- Check for proper system pressure
- Evacuate outdoor unit
- Detach line set
- Disconnect high and low voltage wiring
- Set pad and unit along back side of house
- Perform a heater install and attachment of line set
- Reinstall line set to outdoor unit
- Charge system to appropriate system specs and line set size/distance to unit
- Reconnect high/low voltage            $3350

  DUE TO THE EXTENSIVE SIZE OF THIS PROJECT AND NATURE OF POOR WORKMANSHIP PERFORMED, IT IS RECOMMENDED AT LEAST A 10% FACTOR BE ALLOWED FOR INCIDENTALS OR UNFORESEENS. ADDITIONALLY, THE PRICING IS SUBJECT TO CHANGE BASED OFF OF DESIGN REQUESTS FROM CLIENT/MATERIAL CHOSEN TO BE INSTALLED ON JOB ETC.